All persons have business with the Honorable United States Court of Appeals of the Ninth Circuit will now adjourn. Give your attention and you will be heard. God save these United States and this Honorable Court. Good afternoon ladies and gentlemen. And good afternoon Judge Gould. Yes, good afternoon Judge Baer. We'll proceed with the Livaditis v. Ron Davis. Each side has 30 minutes. All right, go ahead. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court. Gary Soward and Jan Norman appearing on behalf of the petitioner, Mr. Livaditis. And I just wanted to thank both the Court and Mr. McCutcheon for your accommodation and rescheduling it under the circumstances that we need. We appreciate that very much. In this case, Your Honor, the jurors were given the solemn task of deciding only the question of penalty, whether it be life without possibility of parole or death for the crimes that Stephen Livaditis admitted he committed as a 22-year-old. But unfortunately, counsel did not provide the jury with the most important information that they needed to do their task in a way that would inspire confidence in the outcome. In particular, the jurors had no knowledge at all that Mr. Livaditis suffered significant brain damage at the time of the crime, that he also suffered from multiple serious Axis I mental disorders, that the particular areas of his brain that were damaged and the type of the mental disorder were such that it impaired his ability to accurately perceive reality, to make informed judgments or good judgments, and particularly to control his impulses when under stress. They also didn't know, perhaps even most importantly from a mitigation perspective, that all of these impairments were directly traceable to the horrific childhood that Mr. Livaditis had endured, and particularly violence at the hands of his parents, including his father. They did not know, for instance, in that regard, that his potential, his risk, for developing serious mental impairments was exponentially increased after birth by having to witness his father beat his mother to the ground and attack her with a knife. Ms. Howards, we're pretty familiar with the record in this case. This is a case of the denial of writ of habeas corpus by the district court after a state court denial. Correct, Your Honor. It's after the enactment of AEDPA. AEDPA applies. I would like you to focus on what section of AEDPA was violated by the California Supreme Court and how. Very well, Your Honor. And thank you for the guidance on that point. The particular section that was violated was 28 U.S.C., 2254 D, and primarily subsection 2, the denial of an evidentiary hearing in light of verified allegations in the state court petition setting forth a prima facie case for violation of constitutional rights, specifically the right to effective assistance of counsel in the penalty phase. And the summary denial of that, of those claims, without an evidentiary hearing, under circumstances in which the state court record did not foreclose the possibility that Mr. Lividitis could prove his claim. Well, if the state court record contained facts which a reasonable attorney, if he knew those facts, would be acting reasonably by not investigating and developing a mental illness defense on mitigation, would that not be sufficient to affirm the California Supreme Court's ruling? And I think I understand the thrust of the Court's question. And, yes, it would, but that's respectfully not our case. Our case is one in which there were many facts which counsel simply was not aware of because of his deficient failure to investigate them. But he was aware of one fact, as I remember, and here I may be paraphrasing. But I seem to remember a note in Mr. Denby's trial notes saying that Mr. Lividitis had told him, I guess they were discussing mental illness and mental illness defense, I'm not crazy. I can fake it. And I understand that people who are insane are not executed by the state of California. That was before the California Supreme Court, correct? It was indeed, Your Honor. Doesn't that fact constitute a reason by which a reasonable counsel can refuse to take the step of investigation and development of mental illness? Again, respectfully, Your Honor, I would say absolutely not. Absolutely not? Yes, sir. Your defense attorney and your client is telling you, I'm not crazy, I can fake it, and that's going to get me out of the execution. That doesn't have any effect on counsel's judgment as to whether if he were to have mounted a mental illness defense, that faking might be detected by the people he employed? Sure. So now, if we're dealing with 2254D2, and I think you're correct, we might not agree with the California Supreme Court. We may think they're dead wrong. There's only one fact, and there are 18 on the other side. But our question under Ayala is not whether we agree with the California Supreme Court, whether we would deal differently. Our question is that the California Supreme Court make an unreasonable finding of fact. Yes. As I read unreasonable, if there's a reason to do what they did, it's not unreasonable. Why isn't that statement a reason? The reason that statement is not a reason is because, first of all, it's not the only statement Mr. Lividitis made. And I believe the court is referring to the counsel's notes that appear in the respondent's excerpts of record, beginning on page 18 of those notes. And what he said was, in addition to saying that he's not crazy, he says, I may be a little unstable, but I'm not crazy. He says many other things in those notes that were before the California Supreme Court to indicate that, in fact, he was not — he was certainly not telling trial counsel that he didn't want him to investigate a mental state or that there would be no utility in doing so. He also told him that, quote, if he had been acting like a normal person, he would not have gone into the store and acted the way he did. He said, I must have been screwed up in the head to do what I did. He later told trial counsel, and this is at page 8 and 9 of the same excerpt of record Your Honor was referencing, that after he had time to settle down in the county jail hospital and was being interviewed by Mr. Demby, he said actually he was glad he was caught because if he had gotten away with it after killing the guard, he would have never realized how wrong it was. Now, now he realizes that it's wrong. There were many other instances in which he made comments indicating that he was in an altered and a disordered state. There's no question that he made those statements. And we might think that based on a balance of the evidence, those statements carry the day, as opposed to the one statement that I just quoted or paraphrased. But that's not the test. The test is, is it reasonable, let me restate that, was it unreasonable for the California Supreme Court to find, as their single line denial indicated, that Demby wasn't put on notice that there was a mental problem here? And what I'm saying to Your Honor, and perhaps I didn't say it correctly, is that in the collection of statements that we can choose from, because, and in fact the nature of a psychotic illness is what we call psychotic ambivalence, the client in those situations is the least reliable person to be relied on for clinical insight into whether he's crazy or not. Was there any expert testimony before the California Supreme Court to agree with your view of psychotic imbalance? Yes, that was extensively detailed in Dr. Foster's declaration. No, California Supreme Court. Yes, yes, sir. And so the record's clear. Everything that we have cited to this Court in terms of expert reports, everything we have cited was in the California State Court record. There's nothing that we're talking about that was introduced for the first time in the aborted evidentiary hearing process in the district court. So your view is the California Supreme Court had expert witness testimony before it that the statements of Mr. Lividitis to his counsel, Denby, regarding he's not crazy, he could fake it, would compel the California Supreme Court to make a finding that the statement that I paraphrased was not valid as a reason for denying habeas. Yes, it would compel a ruling under Landrigan v. Schreier that it would be an unreasonable determination of the facts. Why would it be unreasonable if the California Supreme Court were not to agree with the expert testimony interpreting Mr. Lividitis' statement as invalid? Well, a couple of reasons. One is they had no alternative expert testimony introduced by the State. The State was given six extensions of time to file an informal response, which under State practice invites them to present any legal or factual material refuting the claims. And they presented absolutely zero. So under this Court's holding in Karo, that is supposed to be significant in terms of the unassailability of the expert's opinion. Now, and I don't, in the least, disparage or criticize the California Supreme Court, and I don't say this facetiously, but the point is that they are esteemed legal scholars, but they are not mental health experts. That's why Ake v. Oklahoma says that when we're litigating this sort of a case, certainly at the trial level, and issues of this sort are an issue, we need to have the assistance of an expert who can make sense of all of this information. Counsel, I have a couple of questions I'd like you to address somewhere in the course of your argument. Sure. The first question is, is there an important distinction between developing mental health evidence for purposes of presenting a defense to the crime, on the one hand, or developing mental health evidence for purposes of showing mitigation evidence that could bear on the appropriate penalty? Well, certainly it has been this Court's jurisprudence that in the latter sense, there's a broader area of consideration, because in that context, we're looking at evidence which is responsive, in fact, to the statutory factors of mitigation under California law, which specifically recognize evidence that would not carry the day on guilt phase may carry the day on penalty phase. And in particular, in this case, there were two, just as in Porter v. McCullough, there were two specific statutory factors of mitigation that were spot on in terms of the ailments that Mr. Lividitis had. One is a commission of the crime under the influence of an extreme mental or emotional disturbance. I'm sorry. Well, I thought you were making the claim, in some part, that the counsel for Lividitis gave ineffective assistance of counsel by not developing this evidence of mitigation. Exactly right. And as in the situation that confronted the United States Supreme Court in Rompilla v. Beard, and that this Court recently addressed in Washington v. Ryan, the initial deficiency of counsel's performance began with the failure to obtain minimally, logically available records, mental health records of his client. In this case, he didn't go to the county jail, the hospital ward, and pick up records that indicated that independent government doctors had evaluated Mr. Lividitis as being potentially floridly psychotic shortly after his arrest. Well, what they said was they didn't know whether his condition was caused by drugs or by psychosis. Right. Up in the air. Well, in my reading, yes, Your Honor, my reading of the further resolution of that equation was once they did the drug screens and eliminated drugs, that left psychosis. And certainly in light of the history that could have been documented had counsel investigated this case, there would have been a further showing that these crimes, in fact, occurred, both this crime and the one in Las Vegas, occurred close in time to when Mr. Lividitis, at the age of 22, was having the sort of scheduled prodromal breakdown that is associated with these sorts of disorders. Thank you. Counsel, if I could interject what my second question was for you. Yes, sir. Then I'll try to just be a listener. My second question is, if you assume for a minute, and, of course, it's an assumption. I am the panel. I haven't made any decision. But if you assume that we agree with you that the California Supreme Court was objectively unreasonable in denying Mr. Lividitis' ineffective assistance of counsel claim as it related to development of mental health mitigation evidence, assume for a moment we agree with you on that. Then my question is, what's the remedy? And that's like a simple question, but it may have a very complex answer. So, for example, the one remedy, if we conclude it, is just to grant, to say the writ should have been granted, and conditionally give relief unless the state gives them another guilt phase hearing or changes the sentence to be not the death penalty. Another possibility is that we could remand to the district court to hold some type of hearing on this, which I don't know if that's permissible under Cullen. So my question to you is, if we agree with you that AEDPA was offended in that respect, what is the remedy? Yes, Your Honor. And actually the very modest remedy that we have been requesting, although I like the first alternative Your Honor posited, but actually in all seriousness, the modest remedy we've been requesting is that we simply be allowed to go back to the district court and complete the briefing that we were in the middle of following the evidentiary hearing that has already been conducted and allow the district court, with the benefit of complete briefing, to see whether we in fact have established our claim based on the evidence we already presented to the district court. What happened in this case is that initially the district court, under the compulsion of IRP and other cases of this circuit, which I do not believe have been undermined by Cullen, by Penholster, but it granted us an evidentiary hearing. And then Cullen v. Penholster was decided, and the judge asked us to address this question about whether basically they should have had a hearing in the first place. And so really our narrow, modest proposal to the court is that we believe the district court got it right the first time, that because there was not an opportunity to develop this claim and prove this claim in State court, it was under Nunes v. Mueller and Kennedy, it was unreasonable for the California Supreme Court to just deny it wholesale without a hearing. It was an unreasonable determination of the facts. Because they didn't allow the evidentiary hearing. Correct, Your Honor. And denied an allegation. At some point I'd like to move and ask you to address the second Strickland prong. And the question was teed up by our court's order granting the certificate of appealability and identified one of the questions, and I'll just go ahead and read it. Given the powerful aggravating circumstances in this case, would it be unreasonable for a State court to conclude there's no reasonable possibility of a different sentence even if counsel had presented evidence the petitioner suffered from mental health problems and his mother was unstable and abusive? The California Supreme Court may have just said, look, this is going to be the end result anyway. What would have made that an unreasonable determination of fact? Sure. And I think the what would have made that an unreasonable determination of fact, an application of clearly established Strickland law, were the same considerations that made it unreasonable in Williams v. Taylor and made it unreasonable in Porter v. McCullough. And that is that the primary mitigating evidence, that is brain damage and major mental illnesses tied to a horrific childhood, none of that, none of that heard a whisper in the court. And the only thing that was presented to the court, I'm sorry, to the jurors for their penalty consideration, was the fact that Mr. Lividitis had pled guilty, so essentially accepted responsibility for his acts, that he was remorseful, that as at different periods during his childhood, he was apparently not a well socially adjusted child. And then finally, that his family would be very, very concerned, very devastated really, if he were to be executed. When we look at that in light of what the United States Supreme Court has said in those instances where that has been presented without the steps taken to introduce all of the mental state evidence and the brain damage evidence, what they repeatedly say is, with due respect, that amounts to naked pleas for mercy by the family. And the court talked exactly about that as possibly being a reasonable judgment. In Pinholster. In Pinholster, the court talked specifically about the defense counsel's task in trying to figure out what might register with one or more members of the jury. Right. And Pinholster is, in many respects, the exact opposite of this case. In Pinholster, which, by the way, was not a summary dismissal by the California Supreme Court, they actually issued an order to show cause so that a return was filed at the petition and traversed. So they had some factual development. But what that allowed the California Supreme Court to see — Well, I don't think there was an evidentiary hearing in Pinholster. There was not. There was not an evidentiary hearing. The court made the point that an evidentiary hearing wasn't required because the State court could look at what had previously been developed in the record. Exactly right, Your Honor. But what was developed apparently as a further stage that we weren't entitled to or we weren't afforded in State court is that trial counsel in that case actually investigated the brain damage. And it was ruled out by Dr. Stahlberg, the same doctor who habeas counsel then tried to use to sort of retool the claim and say, well, while I may have discounted brain damage, I think that maybe some of the school records could indicate some evidence of brain damage. Not diagnosis as we have in our case, not reversing his rule out as he had when trial counsel was trying to decide how to proceed. Secondly, what trial counsel in Pinholster had was advice that the only mental health disorder that could be diagnosed was what they called an Axis II personality disorder, not the Axis I serious psychiatric ailments we have in our case, but a personality disorder that was characterized as a psychopathic personality. So, basically, you know, what is colloquially called the criminal mind. So, great, he had a clinical evaluation that his client had a brain that made him a criminal and he had no brain damage. So left with those rule outs, which our counsel didn't even look at, he then proceeded to ask, to present the mother and seek sympathy for her. In post-conviction, what the California Supreme Court was aware of as well, is that there was what the Supreme Court in Pinholster called sparse additional information, virtually nothing else. There were a few odds and ends that some distant relatives could add, but nothing that moved the needle in any significant fashion beyond what trial counsel had in hand. I would submit, Your Honor, very respectfully, that is a completely different case from what we have. This is the first steps were not taken to uncover a significant mental illness. And what is all the more tragic, as it were, in this case, is this family was very cooperative with Michael Demby, the trial attorney, in trying to tell him the sorts of experiences that Stephen Lividitis had growing up. So that's why, and I apologize to Judge Bea about maybe telling you facts you already know, but the idea that you're a child watching your father try to stab your mother, being saved only by the neighbors, that's something that even if you didn't connect it to the horrific and catastrophic mental health outcomes, that a jury should be aware of, especially if you're trying to create sympathy for the mom. What the jury didn't know was that two decades after those assaults, she still bore visible scars on her head and other parts of her body. And the jury didn't know that because when she asked Mr. Demby if he wanted to look at them to confirm what she was talking about, he chuckled. He chuckled. He laughed at her and said, I'll take your word for it. And then did nothing. Didn't ask any medical expert or anyone to look at those scars and proceed with an evaluation of what that would do to a young child brought up in that environment. And the further question, when you talk about, Your Honor, about the prejudice analysis, because what we have to do under Williams is we have to look at the evidence that was presented in mitigation, the minor pleas for mercy, and then all of this other and say, would it have made a difference? And in this case, what we have is a record of a jury deliberating just on the evidence they had for three full days. And in the course of which, they, on their own initiative, because it was never argued to them, indeed, Mr. Demby didn't even mention the father or any of that in closing argument, they asked about statutory factor F, which is that the defendant committed the crime under circumstances which reasonably gave him to believe he had a moral justification or extenuating circumstances. We stipulate that that was completely inapplicable here. Don't worry about it. I share your perplexity, Your Honor. The point, though, is this was a jury that was carefully going through these factors with no guidance from counsel and saying, could this apply, could this apply? Imagine if they had hit upon one that said, well, at the time of the crime, he was suffering from a severe emotional or mental disturbance, or as Dr. Foster explains, he had an impairment that interfered with his ability to conform his conduct to the requirement of law. As in Porter v. McCollum, it is absolutely clear that there would have been, and I'm sorry to be so absolute about it, Your Honor, but I think it's the exact same case, that there is at least a substantial probability this conscientious jury, if assisted in their task, would have come to a more favorable result. And with the Court's permission, I would reassure you. Kennedy, you want that decision to be made on remand by the district court. I would like the opportunity to finish arguing that to the district court, yes, Your Honor, based on our record thus far. We give you three minutes for rebuttal. Thank you very much. Good afternoon, Your Honor. May it please the Court, Deputy Attorney General Seth McCutcheon on behalf of Respondent. Defense counsel rendered more than just adequate assistance when investigating and presenting a mitigation defense in light of uncontested and horrific crimes. This Court should reject petitioner's claims for the reasons set forth in Pinholster, Richter, and Strickland. Let me direct you to something that your learned friend, Mr. Soward, said. As I understood his point, before the California Supreme Court, yes, there was this statement, which I paraphrased a moment ago, but it would be unreasonable for the reason why mental illness was not developed because there was expert testimony also before the California Supreme Court, unrebutted, that the last thing you want to rely upon as far as mental illness of a defendant in a criminal case is what the criminal defendant says about it because of the psychotic condition, that shouldn't be disregarded, and it would be unreasonable, it would be unreasonable as a matter of law to rely on that kind of statement. Do you agree with that? Well, I think foremost, it should be noted that this is not a D2 issue. This is a D1 issue. This was a summary denial and there were no factual determinations made by the California Supreme Court. Yes, but I think the point is that because, if I understood Mr. Soward correctly, what he's saying is there should have been an evidentiary hearing because there were factual allegations which had to be developed. Well, so under California habeas procedure, at the pleading stage, they take all the allegations by petitioner and they generally assume them to be true. However, petitioner does have pleading requirements. Petitioner cannot simply say, I was innocent or defense counsel was deficient without backing them up. He has to provide more than just conclusory statements, hearsay statements, or statements that are unsupported by readily available documentary evidence. And petitioner did not provide the court with how defense counsel, Mr. Denby, was deficient in his investigation. Well, Mr. Denby himself acknowledges that he knew that the defendant had suffered from, like I said, at least two head injuries, and there were submitted the expert reports that at least would suggest a question about the defendant or the petitioner's mental state. And the State does not appear to have submitted anything to the California Supreme Court. So what was there in the record that the court could have relied upon to decide the factual questions could be dismissed out of hand? There was abundant evidence. And I think first and foremost, there was the fact that Mr. Denby retained and consulted with a psychiatrist. Well, there's a reference to a mental health expert, but do we know anything at all other than that fact? We do, because there's more than that. Before the State court, there were filings, 987.9 documents, expense reports that were part of the Superior Court file that identified Dr. Michael Coburn as a psychiatrist that was retained and did, in fact, evaluate petitioner. And it's presumed that Mr. Denby determined that petitioner did not have a viable self-defense based on Dr. Coburn's evaluation. Well, what can the California Supreme Court have relied upon to reach such an inference? I mean, we don't know what Dr. Coburn said. And so I guess that's an inference that could be drawn, but it's one that kind of screams out for looking to see what's under the covers instead of just assuming, well, there's no, I don't, the lawyer must not have seen a lump there, so there's nothing there. And that, is that what you're offering up as the record that would support the California Supreme Court's decision? Absolutely. There is an inference. There's a presumption of competence. And we don't know what the psychiatrist told Mr. Denby because petitioner did not provide that to the California Supreme Court. These gaps in petitioner's pleadings were fatal to his claim. It was not the California Supreme Court's obligation to fill those gaps with information beneficial to petitioner. These were pleading requirements that petitioner failed to meet. That's why this was not a factual determination. This was a legal conclusion that petitioner had not met his burden to plead adequately his claims. Well, Mr. Denby complained in his declaration, and I'm not trying to get to the argument about the continuance, but he said, gee, I'd expect to do a lot more with these and so forth. And so that by itself suggests Mr. Denby saying there was more to be done, even without knowing what was in Dr. Coburn's report. How is that a reliable basis to conclude there's nothing there? Well, first, I don't think you would ever find a defense attorney that wouldn't say there was more to be done. But this record that Mr. Denby did have. What do we know that he did other than consult Dr. Coburn, who was paid something for his services? Do we know anything else? We do. We know he spent a year preparing for this case. We know he met with petitioner dozens of times in jail. He took copious notes. He interviewed petitioner's friends, petitioner's family, family friends, colleagues, coworkers, employers. He retained a psychiatrist. Let me interrupt you for just a second. Your view of this case is quite different, Mr. Wolferts. He says it is 2254 D-2. You say it's a 2254 D-1. You say it's a 2454 D-1 because the pleadings to the California Supreme Court did not adequately plead facts, not conclusions, to make out a case for ineffective assistance of counsel. Let me ask you this. What essential allegation was not pleaded? Petitioner did not explain to the California Supreme Court how defense counsel was deficient. They did not tell the Supreme Court what steps defense counsel took in investigation and how those steps were deficient. Moreover, petitioner did not tell the Supreme Court what the psychiatrist informed defense counsel or how defense counsel would have been deficient in relying on what that psychiatrist told defense counsel. How are they supposed to know that? They're making a charge of ineffective assistance of counsel. This is petitioner's burden. It's petitioner's burden to provide the California Supreme Court with this information. Well, he did allege that Denby was deficient by not investigating and developing mental illness information, right? He certainly did allege that. But, again, there are requirements that you have to support these allegations. Wait a minute. We're talking about two different things. You're saying the allegation as a matter of law was not sufficient. We're talking about Iqbal Tamli allegation, factual allegation versus conclusory allegation. He did allege that Denby was rendered ineffective assistance of counsel by not investigating and developing mental illness evidence, correct? That was the allegation. Well, what's wrong with that? Why isn't it sufficient? In the same way that it wouldn't have been sufficient to allege that petitioner is innocent of the crimes. Well, but it's not just innocent of the crimes. If he says I wasn't in the jewelry store that day, that's a factual issue. See, the record would have been filled with evidence with regard to guilt or innocence. I don't know where the record here is filled with evidence that would permit the Court to factually discount the claim. I mean, like Judge Bea, I think there's a difference between allegation and proof in the end. And the stage here, without an evidentiary hearing, I understand the Supreme Court, U.S. Supreme Court has said, look, the California Supreme Court has a record to look at, but the record here doesn't speak very much about mental health. In particular, the State did not make a submission. And so what was it the California Supreme Court could have relied upon to say factually there's just nothing to this claim? This isn't like a statement of a petitioner saying I'm innocent, end of story, because you've got a mountain of evidence that established guilt. And I'm troubled here with the mountain of evidence, which turns out to be, well, there was a psychologist who charged the State some money for his services, even if we don't know what he said, and with a counsel who acknowledges he knew about head injuries and said he wished he had more time to get the records, which he did not get. What factually there permitted the California Supreme Court to say we've heard enough, there's no need for further investigation, end of story? Well, it's the absence in what they provided. See, that's where I pause, because what they provided included reports from three experts that at least raised questions. Now, everybody here is experienced and understands you can probably get an expert report to say anything. And so there's some room to discount. But these are qualified professionals. It wasn't simply a bold conclusion with no backup. They spent hours with the individual. And so to say there must have been something on the other side that defense counsel looked at, because he did hire a mental health expert, even if we don't know what he said, so we're going to discount everything that petitioner did submit. It's hard for me to understand how that's a factual determination that can be supported. Well, again, it's not a factual determination. But it is, because they didn't reject him as a pleading deficiency. What the court, what the U.S. Supreme Court said in Pinholster in saying it was okay to go without an evidentiary hearing, that the State Supreme Court wasn't required to send it out because they had a record to examine. And I take that to be the process that the California Supreme Court presumably followed here, but there isn't much record they could have examined that would support their conclusion that this claim could be summarily dismissed. Is it purely a pleading deficiency that you think caused it to flunk out? It is, and I'll try to explain it again. Their allegation is that Mr. Demby was deficient in how and what he presented regarding mental health evidence. However, Mr. Demby, it's undisputed that he consulted with a psychiatrist. He received an evaluation from that psychiatrist, and he proceeded without presenting a mental health defense. Now, we don't know what that psychiatrist said or the State Court does. The psychiatrist could have said this man is crazy as a loon. Well. If he said that, then we'd probably have an effective assistance of counsel for not to pursue it. So we infer that he didn't. But the problem is the inference depends upon the assumption that there was effective assistance of counsel. But that is the presumption. We presume competence. That's what Strickland says. We presume that defense counsel was competent until that presumption is rebutted. And Petitioner, just by saying that defense counsel was deficient in his investigation, doesn't rebut that presumption. He has to talk about the steps that defense counsel took and why those steps were deficient. He has to talk about what the psychiatrist told defense counsel and why defense counsel was deficient. So how does his habeas counsel find out about all of that? He goes and consults with Dr. Coburn and asks, what happened in your evaluation? He talks to defense counsel, Mr. Demby. He got a declaration from Mr. Demby, but nowhere in the declaration does it touch on the investigative steps he took or the psychiatrist that he retained. So these absences were not only his burden to provide, but they were fatal to his claim before the California Supreme Court. So even though he offers up the other expert reports to establish there was a case to be made, that's not enough. No, because what his argument apparently is, is that despite what defense counsel learned from his psychiatrist, let's hypothesize that it was he has a clean bill of health. There's no mental defects. The defense counsel was deficient for not then pursuing another psychiatrist to get what they've now provided to Dr. Foster. And suppose we hypothesize that it wasn't a clean bill of health. Or suppose we hypothesize that the mental health expert gave no consideration to physical brain damage. That's not the proper presumption, though. The presumption is that defense counsel was competent. And Petitioner has failed to provide a presumption. I understand the presumption, but at some point it gets circular to support a conclusion that there was not an effective assistance of counsel has to rely on something more than the pure presumption that he performed properly. Well, let me step back. And putting aside the psychiatrist's existence and the evaluation's existence and the presumption that defense counsel relied on it, there was also abundant evidence that demonstrated Petitioner's mental fitness. Defense counsel in his declaration states that Petitioner assisted in the defense. It's clear through interactions with the trial court that Petitioner was engaged. He understood the nature of the proceedings. He understood the charges. Petitioner's post-arrest statements to the police were clear and coherent. One year prior to these crimes, he underwent a four-month-long diagnostic at Nevada State Prison, and they did not diagnose him with any mental defects.  These were committed with someone who used levels of sophistication, who adaptively planned, who after robbing Zales, he robbed this Van Cleef and Arpels, but changed his plan because of problems that he ran into in the first robberies. So all of this, and on top of what we already discussed, was Petitioner's own comments saying that he wasn't crazy and that he knew they couldn't execute a crazy person, he could do a good job if he needed to. All of these factors were also in the state court record, and the court would have considered these when looking at the allegation of Petitioner's that defense counsel was deficient. And again, based on these inadequacies, these failures to back up their allegation, the California Supreme Court was reasonable in rejecting it. But you're arguing based on a D-2. D-1, Your Honor. D-1 is whether you apply the correct Supreme Court case, which is Strickland. That's correct. The district court recognizes this as a D-1 case. In order for Petitioner to succeed, he must show that the Supreme Court's summary denial ran afoul of Strickland. So this is a D-1 case. Under Richter, we look at all the possible reasons why the Supreme Court could have denied these claims. So, again, and I don't want to belabor this, but at this preliminary pleading stage where there was a summary denial, there were no factual. I think you're saying two different things. You're saying, on the one hand, it's a D-1 case because he hasn't adequately pleaded the ineffective assistance of counsel. And now, on the other hand, you're saying under Richter that there's sufficient evidence so that the Supreme Court's finding is not unreasonable. That's a D-2 case, isn't it? No. I think I'm saying the same thing. What I'm saying is that a summary denial reflects a finding that Petitioner has failed to meet its burden of pleading its allegations sufficiently. And under Pinholster, we do not look at the evidence. See, that's where I end this one versus two. This isn't the first time I've been trapped in this morass, and I don't want to go too far with it. But it seems to me Pinholster's point is that there is a record the Court could have examined, and the Court's conclusion is not necessarily limited to a pleading deficiency examination, but a, are there facts in the record that bolster this claim enough to keep it going? The latter strikes me more as a factual, a D-2. And I think that's where Judge Bay and I are lost, but as I say, it's not for the first time and probably not for the last. There is at least some factual element here. Can you cite to me a California Supreme Court case that would articulate a standard that could have caused this petition to be rejected for allegation deficiencies as opposed to substantive deficiencies? Duvall talks about California's habeas procedure and how the pleading stage is played out in the State court. But if we are looking at the reasonable basis for the California Supreme Court's rejection, there's a reasonable basis for both. As for the denial of the claim regarding his abusive and mentally unstable mother, after investigating petitioner's background and family, defense counsel made the tactical decision to portray her as sympathetic rather than as an abusive monster. I don't think your opponent argues that issue. Well, for mental health, again, the record before the State court shows that Mr. Demby did investigate petitioner's mental health. The presumption is that Mr. Demby did determine that petitioner did not have a viable mental health defense. Again, the declaration references his mental health expert. The documents filed in State court identify Dr. Michael Coburn. Counsel, you're saying he didn't have a mental health defense, but was mental health evidence still relevant on mitigation? It certainly could have been relevant. The State court was not provided with what Dr. Coburn's evaluation contained. We subsequently learned that at the evidentiary hearing, but in front of the State court,  the presumption is that Mr. Demby made appropriate use of Dr. Coburn's evaluation. Based on also the abundant evidence that demonstrated his mental fitness, defense counsel, Mr. Demby, made a reasonable decision not to present mental health evidence. Defense counsel has a duty to make reasonable tactical decisions or make reasonable investigation or make reasonable decisions that render particular investigations unnecessary. And so based on this presumption that- Talk about tactical decisions. There's nothing inherently contradictory between taking the tact that Demby did take, which was family sympathy, and showing mental impairment. There is. There is? Absolutely, because the petitioner's mental health evidence is based on this lifelong, this alleged lifelong history of abuse at the hands of the father, the mother, and the uncle. So by presenting this mental health evidence, he would have run into the same problems that he avoided with- and he had 20 stitches in the back of his head as a result of the orphanage accident, but not bring out the facts about the mother? Well, he did present evidence of the head injury. He also presented evidence that his father was abusive. But he could do that without inculpating the mother. In theory, I guess it had their experts base their opinions solely on the abuse at the hands of the father. That would have been something that Mr. Demby could have provided. And you wouldn't want to cross-examine the expert and say, didn't the mother also hit him? Well, this would have turned into a battle of experts, absolutely, and that would have detracted from all the other themes that Mr. Demby was successfully presented. But, again, it doesn't answer the question as to why Mr. Demby was deficient in relying on what Dr. Coburn told him and what Dr. Coburn learned from his evaluation of Petitioner. And that deficiency, again, it's Petitioner's burden to shore that up, and Petitioner failed to meet that. Counsel, Judge Gould, with a quick question. Assuming, for sake of argument or for evaluation, that the panel disagrees with your position and thinks there was an objectively unreasonable determination under either D-1 or D-2 that offends AEDPA, with regard to development of mental health evidence or failure to develop it, assuming that is the case, what's the remedy? Well, considering that there has already been an evidentiary hearing, there's also been briefing after the evidentiary hearing. It was in light of pinholster. But if this court decides that there was a violation of D-1, I guess one solution would be to remand for further briefing regarding what was unveiled at the evidentiary hearing, which, as a district court recognized, Petitioner's allegation suffered after the evidentiary hearing. After there was a battle of experts and after Dr. Coburn testified, Mr. Demby testified, Petitioner's allegations were in worse shape than they were when they were presented to the California Supreme Court, which, again, generally assumed them to be true on their face. But I would like to touch on one thing that I believe Your Honor brought up, which was regardless of how we look at it, we have to eventually talk about prejudice. And when we talk about prejudice, we're going to look at the aggravating facts that were presented at this case. And based on the aggravating and powerful evidence that was presented, there's no reasonable probability that Petitioner would have received a different sentence. They heard, the jury heard, extremely emotionally charged testimony from the survivors of this 13-hour siege. They heard about how these five individuals who had known each other for years were forced to tie themselves up and lie on the ground, threatened at gunpoint consistently throughout the 13 hours. They heard about Petitioner plunging a knife into the back of Mr. Smith because he talked too much. They heard testimony of, or they heard Petitioner shoot Ms. Heilbrunn in the head as she lied on the ground. This is all while these people are lying next to their friends and colleagues and had to lay there and listen for two hours while Mr. Smith struggled for life. They also heard about at the very end of this 13-hour ordeal, moments before escaping, Skinner was ultimately shot and killed. And on top of all of this, they heard testimony from the victims of the Zales robbery who were forced to crawl on the ground and kicked at gunpoint during that robbery. So in light of those aggravating factors and in light of the pitfalls that necessarily came with presenting the theories that Petitioner now advances, there's simply no reasonable probability that Petitioner would have received a different sentence. Thank you. It's for those reasons that I'm asking this court to affirm the district court's ruling. Thank you. Thank you. Thank you. Mr. Sowards. Thank you. If I may just assist the court with questions you asked counsel regarding California pleading requirements that I think may help clarify some of this. Counsel mentioned Duval, and that is, in fact, a case that says the California Supreme Court looks at the allegations, the allegations in the petition, to see whether they state a cause for relief. And in so doing, they assume that they're all true. And if on their face, and assuming there isn't something obviously facially incredible, they state a cause of action, then the court will issue an order to show cause, as it did in Penholster, and potentially have an evidentiary hearing. Contrary to what counsel is saying, part of that pleading requirement does not require any declaration from trial counsel to support an ineffective assistance claim. In fact, it has been the stated policy of the state Supreme Court for several decades that where an allegation is made and there's some argument about what counsel could do to explain or justify his or her conduct, the appropriate method is to have an evidentiary hearing. And I would direct or invite the Court's attention to a case, I know our briefing is a little voluminous, but the case of in-rate Robert Paul Wilson was a case in which a petitioner raised ineffective assistance for failure to make a messiah motion to suppress statements made to police agents, filed no declaration because, as often happens in these cases, sometimes, you know, counsel doesn't want to talk about it at that point. But the Attorney General, sir. I was just going to say, could you respond to your friend's argument on the other side of the case, that even if there was an I.C. problem in terms of deficient lawyer conduct, there's no prejudice under Strickland because of all these other factors? Yes, and I think my colleague overlooks the fact that this is precisely the issue that was addressed by the Court in Williams. When it underscores the prejudice of the absence of evidence, mental health evidence, to explain the conduct. The conduct he described, the events that he described, do cause anyone who hears them to grieve. But it's not going to mitigate the case sufficiently to say his family is going to be sad if you execute him. What the jurors wanted to know and what they were trying to know and what Mr. Demby said he would tell them and never did, is what was going on with Stephen Lividitis? Why would he do this? What would explain it? And the cases of this Court and the Supreme Court have consistently held where the explanation is mental impairment. That overcomes the inherent or has high probability of overcoming the inherent aggravating evidence because it explains the source of the conduct. Time is up. Thank you very much. Thank you very much. The case of Stephen Lividitis v. Ron Davis will be submitted. I'd like to thank counsel, both of you, for a very good presentation. Thank you very much. You've been very helpful. Court is adjourned. All rise.
judges: Gould, Clifton, Bea